# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-cr-0236-SEB |
| | ) | |
| CALVIN WASHINGTON, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT CALVIN WASHINGTON SENTENCING MEMORANDUM</u>**

"It matters not how strait the gate, How charged with punishments the scroll, I am the master of my fate, I am the captain of my soul. " William Ernest Henley. Calvin Washington seeks a fair sentence that is consistent with the factors of 18 U.S.C. § 3553. Mr. Washington accepted responsibility and pled guilty timely.

## I. The Charges

Count 1 Felon in Possession of a Firearm, 18 U.S.C. **§ 922(g)(1)**

## II. Applying the factors of 18 U.S.C. § 3553 (a) to Calvin Washington

### A. Calvin 's History and Characteristics

1. **Calvin 's childhood and background**

Calvin Washington describes an unstable childhood. He was raised by his mother, and his father was not present. The family moved frequently due to his mother's attempts to improve her family's circumstances. Mr. Washington says he lived in Illinois, Indiana,

Minnesota, and Georgia. He states, he attended several different schools during his childhood. The family lived in federally subsidized housing under the commonly referred as Section 8 housing program.  His mother always worked. When his older brother was 16, he took care of the family while she was working. The defendant says he was "always in the street," and played with neighborhood kids who were in similar situations. The defendant admits he was in legal trouble as a juvenile in Minnesota, mainly for fighting and stealing. He says he tried to compete with the "kids that had good stuff" and was "trying to survive." Further, he associated with "bad ass kids and people trying to make it." His basic needs were always met, and he did not suffer from any type of abuse.

The defendant's father lives in Las Vegas, Nevada, and has remarried. The Calvin does not communicate with his father; however, he mentions his last contact with him was eight months ago. He recalls visiting his father in prison in Chicago when he was around seven years old. Otherwise, he saw him a few times during his childhood when he would "bounce" in and out of their lives. The elder Calvin Washington did not provide for his children financially.

Ms. Dockery lives in Michigan City, Indiana, and is employed by Amazon along with serving as a pastor of a church. The defendant has always been close with his mother and describes himself as a "momma's boy." He reports she is a strong woman and supportive, despite "all the stuff I put her through."

Mr. Washington has never been married and is not in a relationship. He has a daughter, Kennidie Lawson, who is two years old as of December 25, 2021. Her mother is Satasha Lawson, age 28, and they reside in Indianapolis. Satasha works at a bank. The defendant is in contact with his daughter and Satasha daily. He is not court-ordered to pay child support but says he financially assists Ms. Lawson with their daughter. Prior to his incarceration, Satasha drove their daughter to visit with him in Chicago, and he kept her Friday through Sunday. The defendant was visiting with Satasha and their daughter, at Satasha's house prior to his arrest

**2. Education and Employment**

Mr. Washington reports he last completed eleventh grade at an alternative school in Minneapolis, Minnesota. There is no historical record of Mr. Washington's academic career. Currently, he is attending GED classes and has passed a portion of the GED testing. He is interested in barbering or obtaining a commercial driver's license.

**B. The Nature and Circumstances of the Offense**

Calvin admits to possessing the weapon.

**C. The Need for the Sentence Imposed**

**1. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

In considering an adequate sentence imposed on a Defendant, the Court should look at the applicable suggested penalty range for the crime. In this case, his guideline offense level is 21 and criminal history category of VI, so his range is 77 to 96 months. Calvin appreciates the seriousness of the sentence that he faces, and has learned from his mistakes and experience.

**2. To Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes**

For a defendant such as Calvin, a lower end of the range sentence would be adequate to remind Calvin that his past criminal conduct and his behavior connected to the instant offense was both hurtful and harmful to the community. He understands that society must be protected from anti-social behaviors.

A minimum sentence would afford adequate deterrence from criminal conduct of similarly situated people within the community, while protecting the public from any further crimes.

A sentence at the low end of the guideline range would take Calvin to his early forties in age and give him ample opportunity to complete multiple rehabilitation programs offered at the BOP. Statistics and data analysis support sentence that gets him past age 29 and into a different group of people who are likely to recidivate. Researchers have consistently found that age is one of the most significant predictors of criminality, with criminal or delinquent activity peaking in late adolescence or early adulthood and decreasing as the person ages.[1] Older offenders are less

---

[1] Tina Chiu, It's About Time – Aging Prisoners, Increasing Costs, and Geriatric Release, Center on Sentencing and Correction, April 2010 at p. 5

likely to commit additional crimes after their release than younger offenders.[2] Studies of parole violations also decreases with age, with older parolees the least likely group to be re-incarcerated.[3] A 1998 study found that only 3.2% of offenders 55 and older returned to prison within a year or release compared with 45 percent of offenders 18 to 29 years old.[4] A 2004 analysis of people sentenced under federal sentencing guidelines found that within two years of release the recidivism rate among offender older than 50 was only 9.5% compared with a rate of 35.5% among offenders younger than 21. [5]

It is also important to note how expensive it is to imprison a person with so many medical issues that are better addressed by doctors within the community. When Comparing younger healthy peers, older inmates have higher rates of both mild and serious health conditions, such as gross functional disabilities and impaired movement, mental illness, increased risk of major

---

[2] Darrell J. Steffenmesier et al, Age and the Distribution of Crime American Journal of Sociology, 94(4), 803-831 (1989).

[3] Brie Williams and Rita Abradles, "Growing Older: Challenges of Prison and Reetnry for the Aging Population," in *Public Health Behind Bars: From Prisons to Communities*, edited DesmondB. Greifinger (New York, NY: Springer 2007).

[4] Barry Holman, Nusing Homes Behind Bars: The Elderly in Prison" *Coalition for Federal Sentencing Reform*, 2(1), 1-2 (1998). See also Robyn L. Cohen *Probation and Parole Violators in State Prison*, 1991 (Washington, DC: Bureau of Justice Statistics, 1995).

[5] United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004).

diseases, and a heightened need for assistance with daily living activities.[6] Hearing loss, vision problems, arthritis, hypertension, and dementia are all more common among older inmates. Consequently, according to a 2004 report from the National Institute of Corrections, the annual cost to imprison an older person was an estimated $72,000 compared to $24,000 to house a younger prisoner.[7] Significantly, these cost numbers are over a decade old and healthcare costs increase faster than inflation making the actual cost at the time that Calvin will have served substantially higher. The low risk of Calvin committing another crime when he is released at or near age forty combined with the high cost of incarceration support giving Calvin a low range sentence. The current cost to house Calvin in the Bureau of Prisons Facilities annually is $44,258.00, according to the figures given in his Presentence Investigation Report.

**3. To Provide Calvin with the Needed Education and Vocational Training, and other Correctional Treatment in the Most Effective Manner.**

If the Court sentences Calvin to a sentence of six years, then he will have the opportunity to get the needed educational and vocational training, mental health care, and other correctional treatment needed to prepare Calvin for rehabilitation and maintenance upon release.

Calvin acknowledges the seriousness of the offense for which he is pleading guilty. He intends to take advantage of every learning and growing opportunity that he will be provided while incarcerated. It is important to note that if provided the adequate educational and

---

[6] Tina Chiu, It's About Time – Aging Prisoners, Increaseing Costs, and Geriatric Release, Center on Sentencing and Correction, April 2010 at p. 5

[7] B. jaye Anno et al., *Correctional Health Care: Addressing the Needs of the Elderly, Chronically Ill, and Terminally Ill Inmates* (Washington, DC: U.S. Department of Justice, National Institute of Corrections, 2004).

vocational training, inmates are less likely to recidivate upon release. If provided an opportunity to learn the proper vocational and social techniques, Calvin will be less likely to recidivate.

In his article Educated Prisoners are Less Likely to Return to Prison, James S. Vacca suggests that, "prisoners who attend education programs while in prison are less likely to return upon release." James S. Vacca, *Educated Prisoners are Less Likely to Return to Prison*, Vol. 55, No. 4 The Journal of Correctional Education, 297 (2004), available at <http://www.jstor.org/stable/23292095>. While the academic aspect of the educational programs is important, the key is added education that must include social and vocational training. Vacca states that "[e]ffective education programs are those that help prisoners with their social skills, artistic development and techniques, and strategies to help them deal with their emotions…[t]he inmates who participate in these programs do so because they see clear opportunities to improve their capabilities for employment after being released." *Id*. Calvin never completed his education. this time incarcerated will given him the much needed time to complete his education and gain a much needed skill to be functional upon release.

**III. Conclusion**

Calvin is before this Court because he has never been properly rehabilitated. An effective process would place him in a position to be a successful productive citizen. Unfortunately for him, the guidelines are very clear on the punishment and he does not have the wide negotiating range he possessed in all his prior state cases. Calvin Washington is a young person who has not meaningfully contributed to his community. He is just like any other young person his age in making irrational decisions. He cannot see his illogical thought processes for

many reasons, starting with his cultural norms, then his marijuana use from an early age. A male brain is not fully developed until much later in life. When you start behind, never get adequately treated for your illogical thoughts, and bombard your body with nonsensical thoughts and actions, you get this result.

This arrest and conviction marks an opportunity for him to slow down, get proper mental guidance, and a solid path for a bright future. We do not know his potential, or untapped skills because he's spent his entire life chasing the wrong people doing dysfunctional things. The state prisons share blame for not rehabilitating him or changing his way of thinking. Calvin will be able to get the proper guidance he needs, and obtain a vocational skill that will allow employers to seek his skills and give him a chance to earn a living that will provide for his daughter[s].

After consideration of all of these factors, Calvin Washington asks this Court to consider a sentence that is long enough to get him the help he needs. A sentence that is sufficient, but not greater than necessary to comply with the purposes set forth in 18 USC § 3553(a). A sentence to the lower end of the guideline range; after this sentencing his road to being the master of his fate and the captain of his soul will move him in the right direction to becoming a valued member of society.

Respectfully submitted,

___/s/_Kenneth L Riggins_
Kenneth L. Riggins #21384-49
1512 North Delaware Street
Indianapolis, Indiana 46202

Telephone: (317) 413-5931
Computer: Kennethriggins@yahoo.com

## **Certificate of Service**

I hereby certify that on this 19th day of July a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

__/s/_Kenneth L Riggins_
Kenneth L. Riggins